616 A.2d 1036

**Helen Hollick SHEMORY, individually, and as assignee of Sylvia J. Klopp, Appellee,**

v.

**KEYSTONE INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1992.

Filed Nov. 24, 1992.

Robert A. Gallagher, Williamsport, for appellant.

John P. Campana, Williamsport, for appellee. (Submitted)

Before ROWLEY, President Judge, and WIEAND and HUDOCK, JJ.

HUDOCK, Judge:

Keystone Insurance Company (Keystone) appeals from the grant of summary judgment in favor of Helen Hollick Shemory (Shemory), and the denial, in part, of its motion for summary judgment in a civil action. We vacate the order and remand with instructions.

The facts and procedural history may be summarized as follows: On or about February 8, 1985, an automobile accident occurred between a vehicle driven by Shemory and another vehicle operated by Sylvia Klopp (Klopp). Keystone had been fraudulently induced into issuing an insurance binder to Klopp through her misrepresentations of her driving record. Keystone's policy of insurance provided liability coverage in the amount of $50,000. Upon discovery of the fraudulent and material misrepresentations regarding Klopp's driving record, Keystone rescinded its policy of insurance. The policy was rescinded within sixty days of the issuance of the binder.

Shemory commenced an action against Klopp seeking damages for injuries she allegedly suffered as a result of the accident. Klopp, through her counsel, settled this action for the sum of $75,000. As part of the settlement, Klopp assigned all her rights against Keystone to Shemory and agreed not to execute on any judgment against Klopp.

Klopp and her husband (the Klopps) thereafter commenced a declaratory judgment action, seeking a determination that Keystone was required to provide them with coverage under the policy of insurance issued to them. The trial court determined that the Klopps were entitled to coverage and awarded counsel fees to the Klopps. On appeal, a panel of this Court affirmed the trial court's decision regarding the insurance coverage, but reversed that part of the trial court's ruling awarding attorney's fees to the Klopps. *Klopp v. Keystone Insurance Companies,* 378 Pa.Super. 605, 549 A.2d

221 (1988). Allocatur was subsequently granted and our Supreme Court reversed the decision of both the trial court and the affirmation by this Court, holding that the Klopps were not entitled to coverage under the insurance binder issued by Keystone, and, therefore, entering judgment in favor of Keystone. *Klopp v. Keystone Insurance Companies*, 528 Pa. 1, 595 A.2d 1 (1991).

Having settled with the Klopps, Shemory brought this action against Keystone, in her individual capacity as well as in her capacity as assignee of Klopp, demanding judgment in the sum of $75,000. After the decision in *Klopp* was filed, both parties in the present case filed for summary judgment. In her motion for summary judgment, Shemory requested that the trial court enter judgment in her favor on the basis of the concurring opinions in *Klopp*. Keystone filed a cross-motion for summary judgment on the ground that, under *Klopp*, Shemory was not entitled to maintain an action against Keystone either as the assignee of Klopp or individually. The trial court, holding that an assignee takes no greater rights than those possessed by the assignor, granted Keystone's summary judgment motion insofar as it applied to Shemory as assignee, but denied the motion as to Shemory in her individual capacity.

The sole issue raised on appeal involves a question not answered, but alluded to, in *Klopp, supra*.[1] Keystone states the issue:

1. Initially, we must address Shemory's motion to quash the instant appeal as interlocutory. Indeed, Shemory's entire argument in her appellate brief consists of two paragraphs stating that Keystone is not placed out of court by the partial denial of its motion and that the grant of her own motion for summary judgment merely allows her to prove her suit. Under the circumstances of this case, we find the order of the trial court appealable. The trial court's order disposing of the cross-motions for summary judgment is unclear as to whether issues concerning Klopp's negligence and the amount of Shemory's damages are to go to trial, or whether the agreement entered into between Shemory and Klopp is controlling as to liability and damages. Keystone brought this matter to the trial court's attention in a timely-filed motion for reconsideration. Because the motion was not acted upon, however, it is treated as denied. On its face, the grant of summary judgment in favor of Shemory entitles her to judgment as a matter of law. In her complaint, she demanded a sum certain, namely $75,000. Thus, the

## A. WHETHER A PARTY INJURED IN AN AUTOMOBILE ACCIDENT CAN BRING A DIRECT ACTION AGAINST AN ALLEGED TORTFEASOR'S INSURANCE CARRIER WHEN THE INSURANCE POLICY WAS VOID AB INITIO FOR FRAUD IN THE APPLICATION.

Keystone's Brief at p. 3. The trial court was presented with an issue involving the correct interpretation and application of *Klopp, supra.* We shall therefore discuss *Klopp,* the trial court's interpretation of same, and then assess the interpretation given by the trial court.

As stated above, our Supreme Court in *Klopp, supra,* held that the Klopps, due to their fraudulent inducement, were not entitled to coverage under the insurance policy issued by Keystone without differentiating between first-party benefits or third-party coverage. In so holding, Chief Justice Nix, in an opinion in which Justice Zappala and Justice Papadakos joined, stated:

> If we were to follow the interpretation urged upon us by the Klopps, a situation would result whereby insurers who are victimized by fraud could resort only to the prospective relief of cancellation without the ability to engage the retrospective relief of rescission. Consequently, in cases such as this, insurance carriers would be required to pay claims on policies procured by fraud. Such an absurd result must be avoided. 1 Pa.C.S. § 1922(1).

*Klopp,* at 7, 595 A.2d at 4 (footnote omitted). While joining the majority opinion, both Justices Larsen and Cappy filed separate concurring opinions. The brevity of Justice Larsen's opinion allows for its reiteration *in toto:*

> I join the majority opinion with the proviso that the fraudulent policyholder is estopped from making any per-

trial court's order seemingly grants judgment in favor of Shemory in the amount of $75,000. While the order does not enter this amount as a judgment, this fact does not affect its appealability. *See Coyle v. Richardson–Merrell, Inc.,* 372 Pa.Super. 118, 538 A.2d 1379 (1988) (order granting summary judgment is final and need not be reduced to judgment in order to be appealed). Thus, we deny the motion to quash.

sonal claims arising out of the policy. Third parties [sic] suits and derivative suits are permitted.

*Id.*, at 8, 595 A.2d at 5. Justice Cappy, recognizing that the issue was not before the Court, nevertheless opined that "overwhelming public policy considerations would dictate a different result where [claims of innocent, injured third parties] are involved." *Id.* Justice Cappy explained that the Motor Vehicle Financial Responsibility Law, (MVFRL) 75 Pa.C.S. § 1701 *et seq.*, (Purdon Supp.1992), is a mandate by the legislature that all owners of motor vehicles in Pennsylvania obtain liability insurance. Finding that this requirement is neither intended to protect the policyholder nor the insurance company, but rather, to protect the innocent and injured third-party public, Justice Cappy found that the common law concepts of third-party beneficiaries was inapplicable,[2] and that the rights of the third-party beneficiaries would be considered original rather than derived from the rights of the insured. Justice Cappy believed that this result would be consistent with the "main concern of the legislature in enacting the MVFRL, that is, to protect the innocent and injured public." *Id.* In conclusion, Justice Cappy remarked:

> Likewise, it would be preposterous to conclude that, with regard to innocent and injured third parties who participated in no way in the fraud perpetrated on the insurance company, the legislature would have intended that they be denied protection as a result of the policy holder's fraud where the [MVFRL] itself has been created for their protection and benefit. Thus, it is my view that, with regard to innocent and injured third parties, the insurance company would be bound to honor the liability provisions of the insurance contract and may cancel said provisions only pursuant to [40 P.S. § 1008.5 Purdon (1992) ].

Id., at 9–11, 595 A.2d at 5–6. Justice McDermott filed a dissenting opinion, in which he stated his belief that recission

---

2. As identified by Justice Cappy, at common law, the rights of a third-party beneficiary can be no greater than those of the original parties to the contract. *Klopp,* at 8, n. 2, 595 A.2d at 5, n. 2.

was not available to insurance companies. Justice Flaherty concurred in the result of the majority opinion.

The trial court in the instant case, recognizing the discussion of the present issue in dicta in the concurring opinions, stated that there was no controlling appellate court decision on the precise issue. The trial court rejected Keystone's arguments to the contrary and determined that third-party actions were viable in Pennsylvania. The trial court reasoned as follows:

[Keystone] claims that even if such a cause of action is viable, [Shemory] is not injured because she would be in the same position if the binder had never been issued. We disagree. At the time of the accident, Pennsylvania law required each motor vehicle registrant to certify that he or she was financially responsible at the time of registration or renewal thereof. 75 Pa.C.S.A. 1786. Furthermore, in certain situations involving traffic offenses and accidents, drivers were required to show proof of financial responsibility. 75 Pa.C.S.A. 1784, 1785. If a person failed to show such proof, the vehicle registration would be revoked and if the driver was the owner of the vehicle, his or her operating privileges would be suspended. A driver, to some extent, reasonably relies on these laws and believes that motorists will be insured. In addition, these laws increase the likelihood that persons without insurance will abstain from driving until they obtain insurance. Had Keystone not issued the binder to the Klopps, they might have either abstained from driving, or validly procured insurance from another company. Therefore, as compared to [Keystone], we find [Shemory] to be an innocent and injured third party.

Given the fact that an insurance company can protect itself by either cancelling a policy prospectively or by waiting to issue binders until it satisfies itself as to the accuracy of the representation in the application, we find that third party suits are viable and grant [Shemory's] motion for partial summary judgment.

Trial Court Opinion, 1/22/92, at pp. 3–4. We are unpersuaded by the rationale of the trial court.

Despite the belief of the trial court that people will abstain from driving until they are able to obtain insurance, many drivers do not so abstain, and, even in the face of license revocations and penalties, operate motor vehicles without acquiring insurance. The legislature recognized that this problem could occur and, therefore, provided that insurance companies must offer for purchase to each applicant both uninsured and underinsured motorists coverage:

### § 1731. Availability, scope and amount of coverage

(a) **Mandatory offering.**—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

(b) **Uninsured motorist coverage.**—Uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles. The named insured shall be informed that he may reject uninsured motorist coverage by signing the following written rejection form:

\*   \*   \*   \*   \*   \*

(c) **Underinsured motorist coverage.**—Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles. The named insured shall be informed that he may reject underinsured motorists coverage by signing the following written rejection form:

\*   \*   \*   \*   \*   \*

75 Pa.C.S. § 1731(a), (b), (c) (Purdon Supp.1992) (forms omitted).

In *Klopp, supra,* a majority of our Supreme Court determined that common law recission was available to insurance companies within sixty days of issuance of the insurance binder and, therefore, once recission occurs, the particular insurance policy is void *ab initio.* Thus, when the accident at issue occurred, Klopp was an uninsured motorist. Moreover, the definition of the term "uninsured" indicates the legislature contemplated that the term would include scenarios where contracts of insurance are either rescinded or cancelled:

### § 1702. Definitions

The following words and phrases when used in this chapter shall have the meanings given to them in this section unless the context clearly indicates otherwise:

      \*     \*     \*     \*     \*     \*

**"Uninsured motor vehicle."** Any of the following:

(1) A motor vehicle for which there is no liability insurance or self-insurance applicable at the time of the accident.

(2) *A motor vehicle for which the insurance company denies coverage* or the insurance company is or becomes involved in insolvency proceedings in any jurisdiction.

(3) An unidentified motor vehicle that causes an accident resulting in injury provided the accident is reported to the police or proper governmental authority and the claimant notifies his insurer within 30 days, or as soon as practicable thereafter, that the claimant or his legal representative has a legal action arising out of the accident.

75 Pa.C.S. § 1702 (Purdon Supp.1992) (emphasis added).

As the above sections indicate, an "innocent and injured third party" is not left unprotected under the MVFRL unless he or she chooses explicitly to reject coverage in the event of injuries incurred by an uninsured or underinsured motorist. In the present case, a review of the record reveals that Shemory may have the optional uninsured and underinsured motorist coverage offered under her own policy and is not left, therefore, without a remedy. Thus, Shemory's proper avenue of redress is her own insurance policy. In this way, Shemory is compensated for her injuries in a manner consistent with the provisions of the MVFRL, and the insurance company, an

equally "innocent and injured" party, is not "victimized by fraud[.]" *Klopp*, at 7, 595 A.2d at 4.

The order granting Shemory summary judgment and denying, in part, Keystone's motion for summary judgment is vacated. The matter is remanded to the trial court for the entry of summary judgment in favor of Keystone on Shemory's claim in her individual capacity. Jurisdiction relinquished.