618 A.2d 430

**Wade A. STRICKLER and Susan A. Strickler, His Wife**

v.

**James L. HUFFINE, Royal Insurance Company.**

**Appeal of ROYAL INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Sept. 29, 1992.

Filed Dec. 22, 1992.

464

Dara A. Decourcy, Pittsburgh, for appellant.

Edward L. Russakoff, Pittsburgh, for Strickler, appellees.

Before ROWLEY, President Judge, and POPOVICH and CERCONE, JJ.

CERCONE, Judge:

This is a direct appeal from a civil judgment entered after an Allegheny County jury returned a verdict in favor of plaintiffs/appellees, Wade and Susan Strickler. We affirm.

Appellee Wade Strickler was injured in Fayette County on June 20, 1985 while riding as a passenger in an automobile driven by James L. Huffine. The binder of insurance which had been issued to Mr. Huffine by appellant Royal Insurance Company was cancelled effective July 28, 1985 because Mr.

Huffine's license was under suspension at the time of his application. In a letter dated August 8, 1985, appellant received actual notice of the accident from appellees' counsel less than two months after its occurrence. Appellees subsequently initiated legal proceedings in Fayette County against Mr. Huffine. On October 14, 1985, Royal Insurance sent a letter to Mr. Huffine denying coverage. Thereafter, Mr. Huffine took no action to defend against the suit and the Stricklers received a default judgment on the question of liability on March 31, 1988. The Court of Common Pleas of Fayette County subsequently granted summary judgment versus Mr. Huffine in the amount of forty-three thousand five hundred dollars ($43,500) to the Stricklers. This appeal stems from an Allegheny County garnishment action filed by the Stricklers against Mr. Huffine and his insurance carrier, Royal Insurance Company, in an effort to collect the Fayette County damage award.

In January of 1989, the Stricklers served Royal Insurance Company (hereinafter "Royal") with garnishee interrogatories. Royal filed an Answer and New Matter in April of 1989. In essence, Royal denied any liability on its part and refused to satisfy the Fayette County judgment entered against Mr. Huffine. At trial, the Stricklers presented copies of the Fayette County court order granting summary judgment, and a stipulation by Royal that a contract for insurance with Mr. Huffine listed as the insured was in effect on the date of the accident. After the Stricklers rested, Royal moved for a compulsory non-suit. It was Royal's contention that the Stricklers had not established a *prima facie* case since they never demonstrated that Mr. Huffine had complied with all conditions precedent to insurance coverage. The trial court rejected this claim and denied the non-suit. Royal then presented its case in chief and motioned for a directed verdict. The trial judge refused to grant the motion and the jury ultimately returned a verdict in favor of the Stricklers. Royal filed post-trial motions which were also denied by the trial court. The Stricklers (hereinafter "appellees") praeciped for

entry of judgment and the instant timely appeal by Royal Insurance Company followed.[1]

Appellant Royal has identified the following issues for our review:

I. Did appellees fail to satisfy their burden of production, in failing to offer evidence of the insured's [Mr. Huffine's] compliance with policy conditions sufficient to shift the burden to appellant to prove the insured's breach of policy conditions and resulting prejudice?

In the alternative, was the evidence insufficient to warrant submission of the issues to the jury, or was appellant entitled to a directed verdict where conclusive evidence of the insured's breach and resulting prejudice to the insurer was adduced?

II. Did the [trial] court abuse its discretion in excluding all evidence of defendant Huffine's misrepresentation in his application for insurance that he possessed a valid operator's license, and appellant's consequent cancellation of the binder issued to Huffine?

III. Did the [trial] court err in refusing to instruct the jury that [defendant Huffine's] conduct in permitting default judgment to be entered against him established prejudice to appellant?

IV. Did the [trial] court err in instructing the jury that when an insurer refuses coverage to the insured, the insured is no longer obligated to send the insurer suit papers, and in refusing appellant's request for instruction that the failure to forward suit papers, if prejudicial to the insurer, would release the insurer from its obligations under the contract?

We shall consider these claims *seriatim*.

The essence of appellant's first claim of error is that the trial court misapplied the precedential caselaw of this jurisdiction. To this end, appellant argues that it was irremediably prejudiced by the Fayette County default judgment which occurred because Mr. Huffine never notified appellant of

1. The insured, defendant James L. Huffine, is not a party to this appeal.

either the accident or of the fact that the Stricklers filed suit as a result thereof. It appears to be appellant's theory that under the law of Pennsylvania, the Stricklers were responsible for proving that on the relevant date Mr. Huffine was covered by a policy of insurance issued by Royal and that Royal suffered no prejudice by its lack of notice of the litigation which occurred prior to the garnishment proceeding underlying this appeal. Although appellant Royal concedes that it had issued an insurance binder to Mr. Huffine which was effective on the date of the accident, Royal contends that *coverage* was never in effect for Mr. Huffine because he failed to pay the insurance premium when it came due. Royal also argues that it would not have issued an insurance policy in any event because Mr. Huffine allegedly made material misrepresentations on his application for insurance.

First, we find appellant's argument specious insofar as it relies on the contention that coverage was non-existent on the relevant date because a "binder" and not a policy of insurance was in effect. "It is the custom of the insurance industry, and sound public policy, to provide on-the-spot temporary insurance coverage in the form of a binder until the application information can be verified and a formal policy issued." *Klopp v. Keystone Ins. Companies*, 528 Pa. 1, 7 n. 5, 595 A.2d 1, 4 n. 5 (1991). It is well settled in Pennsylvania that a binder constitutes evidence that insurance coverage has attached at a specific time, and continues in effect until either the policy is issued or the risk is declined and notice thereof is given. *Harris v. Sachse*, 160 Pa.Super. 607, 612, 52 A.2d 375, 378 (1947). *Accord Stevens v. Kemper Ins. Co.*, 384 Pa.Super. 263, 558 A.2d 113 (1989), *allocatur denied*, 523 Pa. 646, 567 A.2d 650 (1989). The validity of a binder is not dependent upon payment of the premium. *Rossi v. Firemen's Ins. Co. of Newark, N.J.*, 310 Pa. 242, 251, 165 A. 16, 19 (1932); *Harris v. Sachse*, 160 Pa.Super. at 615–16, 52 A.2d at 380.

We note that in the 1991 case of *Klopp v. Keystone Insurance Companies, supra,* the Pennsylvania Supreme Court ruled that failure to disclose material information on an application for automobile insurance entitles the insurance compa-

ny to the common law remedy of contract rescission if the carrier acts within the first sixty days after issuing a binder. Under such circumstances, the insurance binder is considered ineffective to trigger liability from its inception because contract law deems the coverage void *ab initio* rather than as of the date on which the denial of coverage letter was issued. *Klopp* explicitly held that a fraudulent policyholder is estopped from making personal claims arising out of the purported policy. However, concurring opinions filed by both Justice Larsen and Justice Cappy indicate that the rights of an innocent and injured third party were neither considered nor determined by *Klopp*. Both concurring opinions strongly imply that where an innocent third party is concerned, the Supreme Court might be disposed to hold the fraudulent policyholder's insurance carrier liable. A panel of the Superior Court was recently confronted with the issue left unresolved by *Klopp*, namely the precise rights of an innocent and injured third party against a carrier who has issued a binder of coverage because of material misrepresentations by the applicant for insurance. *Shemory v. Keystone Insurance Company*, 420 Pa.Super. 405, 616 A.2d 1036 (1992), filed November 24, 1992), holds that such a third party has no rights against the policyholder's carrier where rescission has been sought or the issuance of a policy has been denied within sixty days of the binder's issue date.

The outcome of the instant case is not controlled by either *Klopp* or *Shemory*, however. Royal sought neither cancellation nor rescission within the prescribed sixty day period. Although there is some dispute as to the effective date of the binder issued to Mr. Huffine, the certified record discloses that it was effective either on the 24th or 25th of April 1985. That the accident underlying the instant appeal occurred on June 20th, fifty-seven days into the binder period, is irrelevant. Royal did not attempt either to cancel the binder or seek rescission until July 28, 1985, well over sixty days after the binder's April effective date. Within the parameters defined by *Klopp* and explicated by *Shemory*, Royal Insurance Company failed to act on a timely basis to protect

its rights and is therefore ineligible to receive common law rescission.

■ Further, we find no authority in support of appellant's contention that appellees were required to shoulder the burden of demonstrating either that the insured complied with the contractual notice provisions or that appellant remained unprejudiced by the insured's alleged failure to provide the required notice. The law of Pennsylvania is currently the exact converse of the point advanced by appellant's argument:

We therefore hold that where an insurance company seeks to be relieved of its obligations under a liability insurance policy on the ground of late notice, *the insurance company* will be required to prove [ (1) ] that the notice provision was in fact breached and [ (2) ] that the breach resulted in prejudice to its position.

We recognize that prejudice is a difficult matter to prove affirmatively, but although it may be difficult for the insurance company to prove it suffered prejudice as a consequence of an untimely notice, it appears to us that it would be at least as difficult for the claimant to prove a lack of prejudice.

*Brakeman v. Potomac Insurance Co.,* 472 Pa. 66, 76–77, 371 A.2d 193, 198 (1977) (emphasis added). It appears that appellant seeks to resurrect the strict contractual approach to insurance law which obtained in Pennsylvania before *Brakeman.* However, it would be inappropriate for either the trial court or for this court to ignore a plain Supreme Court pronouncement of law under the guise of following prior precedent which has been explicitly overruled by *Brakeman.* We agree with the appellees that the cases cited by appellant, when carefully read in their entirety and placed in their proper chronological context, are either inapplicable or actually support the trial court's rulings concerning the plaintiff's burden of proof and whether appellees presented a *prima facie* case sufficient to go to the jury on the question of appellant's liability.

■ We find no error by the trial court in refusing to grant appellant a directed verdict on the question of prejudice.

Appellant contends that Mr. Huffine's failure to forward notice of the lawsuit both prevented Royal from properly investigating the facts surrounding the automobile accident and precluded the insurer from participating in the defense of the original Fayette county action. However, testimony by Thomas R. Henderson, a Claims Manager who had worked for Royal Insurance Company for twenty-five years, established that Royal declined to fully investigate the accident and would have refused to participate in Mr. Huffine's defense had timely notice been received regarding the Fayette County action. N.T. January 18–23, 1991 at 62, 67–68, 70–74, 86–87.

Mr. Henderson testified that counsel for the Stricklers provided Royal with actual notice of the accident only two months after it occurred and that, although a claims adjustor was assigned to the case, he was specifically instructed not to investigate the facts. *Id.* at 62, 67–68, 70–71. Royal made no effort to contact the investigating police officer and never attempted to ascertain whether there were witnesses to the accident.[2] *Id.* at 69–70, 86. The claims adjustor was advised to refrain from travelling to Mr. Huffine's home to interview him in person. *Id.* Although Royal's representatives were unsuccessful in their attempts to reach Mr. Huffine via telephone during working hours, Mr. Henderson admitted that no effort was made to contact Mr. Huffine in the evening. *Id.* at 72. This fact was confirmed by the adjustor, Gary L. Boynes, who also stated that he never tried to meet Mr. Huffine personally. *Id.* at 86–87.

Finally, Mr. Henderson explicitly stated on cross-examination that even had Royal received the suit papers on a timely basis, their strategy would have been to deny coverage and to refuse to participate in any defense mounted by Mr. Huffine.[3] *Id.* at 73–74. In light of these facts adduced by appellees at trial and regardless of who maintained the burden of proof, it

**2.** The transcript indicates that there was at least one witness identified at the accident scene. *Id.*

**3.** According to the New Matter filed by appellant on April 21, 1989, Royal actually denied coverage to Mr. Huffine on October 14, 1985, well before the default liability judgment was entered in Fayette County on March 31, 1988.

appears that appellees have succeeded in demonstrating that appellant suffered no prejudice attributable solely to Mr. Huffine's actions. We therefore can discern no basis upon which the trial court, as a matter of law, could have directed a verdict in appellant's favor. *See also Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 589, 152 A.2d 484, 488 (1959) (where a claim is potentially within the scope of an insurance policy, the insurer who refuses to defend at the outset does so at its own peril). *Accord Stidham v. Millvale Sportsmen's Club*, 421 Pa.Super. 548, 618 A.2d 945 (1992) (discussing the availability of an action for declaratory judgment as a means by which an insurance company can establish whether it has a duty to provide a defense in a given case).

■ Royal next contends that the trial court committed abuse of discretion in excluding all evidence of an alleged misrepresentation in Mr. Huffine's application for insurance to the effect that he possessed a valid operator's license and that in consequence the insurance company cancelled the binder and declined to issue a policy of insurance. Appellant argues that this evidence was necessary because "[t]he essence of appellant's defense was that [Mr.] Huffine utterly failed to cooperate in any respect with appellant, as evidenced by his failure to notify appellant of the accident, his failure to respond to appellant's efforts to discuss the accident with him, his subsequent failure to notify appellant of the suit, and his conduct in permitting judgment to be entered against him." Appellant's brief at 23–24. Appellant also believes this information was necessary to its case since its absence permitted the jury to speculate that the reason the coverage was declined stemmed from Mr. Huffine's failure to pay his premium. However, the trial court ruled that this evidence must be excluded because it was irrelevant as appellant had effectively stipulated that coverage existed at the time of the accident. Further, the trial court deemed the evidence to be unduly confusing as it might cause the jury to consider an issue not before it: whether coverage existed under the binder.

■ Our standard of review for evidentiary rulings by the trial court is very narrow. *Gemini Equipment v. Pennsy*

*Supply,* 407 Pa.Super. 404, 413, 595 A.2d 1211, 1215 (1991). In general, we may reverse only for an abuse of discretion or error of law. *Id.* The exclusion of evidence which is irrelevant, confusing, misleading, cumulative or prejudicial is within the sound discretion of the trial court and its decision thereon will not be disturbed lightly. *Concorde Investments, Inc. v. Gallagher,* 345 Pa.Super. 49, 56, 497 A.2d 637, 641 (1985).

Appellant's claim is completely meritless insofar as it concerns the trial court's ruling that the evidence in question was irrelevant. The fundament of appellant's argument is a specious quibble over the applicable definition of the term "coverage." This question itself is irrelevant. Regardless of whether appellant is willing to concede the point, Royal stipulated that an insurance binder was in effect at the time of the accident. It is a distinction without a difference that an actual policy of insurance was never issued. As our previous discussion indicates, the binder constituted evidence that "insurance coverage" attached at a specific time and continued in effect until the risk was declined by Royal. *Harris v. Sachse, supra.* Royal did not decline the risk until after the accident in question occurred.

We note, moreover, that appellant was not prevented from following its chosen defense strategy by the trial court's evidentiary ruling. On redirect, Mr. Henderson testified freely concerning the total lack of cooperation by Mr. Huffine in that he never responded to letters or telephone calls from the insurance company. *See* N.T. January 18–23, 1991 at 75–81. In light of these facts, we are not prepared to find that the trial court committed abuse of discretion in excluding the evidence concerning Mr. Huffine's alleged misrepresentations as both irrelevant and unduly confusing to the jury. Nor can we discern any indication that appellant was impermissibly prejudiced by this ruling so as to mandate the grant of a new trial.

■ Next, appellant contends that the trial court erred in refusing to instruct the jury that Mr. Huffine's conduct in permitting a default judgment to be entered against him established prejudice as a matter of law. In support of this

claim, appellant quotes the following extract from *Hargrove v. CNA Insurance Group,* 228 Pa.Super. 336, 323 A.2d 785 (1974), "Simply then, if the evidence demonstrates that the insureds failed to forward suit papers, prejudice to the insurer is clearly established by the fact that a default judgment was taken against its insureds." *Id.,* 228 Pa.Super. at 340, 323 A.2d at 787 (citation omitted). Unfortunately, appellant failed to demonstrate at trial that the suit papers were never forwarded; appellant merely showed that Royal never received any such papers. *See* N.T. January 18–23, 1991 at 67; 86–87. The holding in *Hargrove* explicitly requires that in order to show prejudice, the *insurer* must prove that suit papers were never forwarded, not merely that they were never received. *Hargrove v. CNA,* 228 Pa.Super. at 340–42, 323 A.2d at 787–88. Appellant was not entitled to the requested point for charge and the trial court correctly refused to so instruct the jury.

Appellant's final claim is that the trial court erred in granting appellee's point for charge number 9 yet refusing Royal's point for charge number 7. Appellant wanted the court to instruct the jury consistent with the following language: "If Huffine failed to forward suit papers and the other pleadings which he received in the lawsuit filed against him by the Stricklers, and such failure resulted in prejudice to Royal, then Royal is released from its obligations under the contract." Appellant's brief at 27. Instead, the trial court charged consistently with appellees' modified point number 9: "Once an insurance company refuses to provide its insured with coverage, the insured is no longer obligated to send the company suit papers." *Id.*

■ Citing *DiSalle v. P.G. Publishing Company,* 375 Pa.Super. 510, 565–66, 544 A.2d 1345, 1374 (1988), *allocatur denied,* 521 Pa. 620, 557 A.2d 724 (1989), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989), the trial court found that appellant waived this issue by not timely objecting to the omission of any instruction on point for charge 7. The trial court also determined that appellant assented to the final version of the instruction on modified point for charge 9 and

failed to timely object to the trial court's ruling thereon. While we disagree somewhat with the trial court's interpretation of the record, we nonetheless are in no position to grant the requested relief because we find that the trial court reached the correct result. The Superior Court may affirm the action of the trial court for reasons other than those given by the trial judge. *Kline v. Blue Shield of Pennsylvania,* 383 Pa.Super. 347, 351–52, 556 A.2d 1365, 1368 (1989).

Appellant maintains that Royal never agreed to the omission of point for charge number 7, but merely ceased to press the issue in order to avoid antagonizing the trial judge. We are cognizant of the difficulty faced by any trial advocate who must zealously protect his or her client's interest in the framing of points for charge while maintaining a properly deferential relationship with the trial court. Moreover, appellant's argument may have merit with regard to the hypothesis that at some stage of a proceeding, a mechanical recitation of objections could possibly become an exaltation of form over substance. The record in this case, however, shows no indication that the relationship between appellant's counsel and the trial court was ever anything other than properly balanced during the discussion regarding the jury instructions both before and after the charge was given. *See* N.T. January 18–23, 1991 at 242–257; 273. The record does not even hint that the trial judge waivered from the appropriate role of neutral arbiter when discussing the points for charge.

Nor do we find that appellant waived this sub-issue as appellees contend. Rather, in contradiction to appellant's claim, our inspection of the record discloses that defense counsel clearly agreed with the trial court's decision to dispense with any instruction consistent with point for charge number 7. After appellees' trial counsel objected to appellant's point number 7 on the grounds that it was inconsistent with appellee's modified point number 9 (which had already been accepted by the trial court), the following exchange occurred:

By the Court: I could say the company would be justified in refusing coverage on the basis, you know, this is what his testimony was although it was inaccurate.

I don't know. I think it's better to leave it [Point for Charge Number 7] out.

By counsel for appellees: Yes. Yes.

By counsel for appellant: Okay.

N.T. January 18–23, 1991 at 256–57. The Pennsylvania Supreme Court has determined that abuse of discretion is "not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record, discretion is abused." *Kelly v. County of Allegheny*, 519 Pa. 213, 217, 546 A.2d 608, 610 (1988). We see no indication that the trial judge committed an abuse of discretion in declining to instruct the jury on appellant's point for charge number 7 in light of the above described discussion.

The second half of appellant's argument concerning the propriety of the jury instruction given pursuant to appellees' point for charge number 9 has not been waived. Our inspection of the record discloses that appellant preserved an objection at all relevant times. We will therefore consider the merits of this portion of appellant's argument. It is well settled that when reviewing a party's challenge to a jury charge, an appellate court will scrutinize the entire instruction against the evidence presented to determine if prejudicial error has occurred. *Linde Enterprises, Inc. v. Hazelton City Authority*, 412 Pa.Super. 67, 71, 602 A.2d 897, 899 (1992). We will not reverse a trial court's instruction on the basis of isolated inaccuracies, but will only reverse if the charge as a whole was erroneous and prejudiced the complaining party. *Id.* Where the charge fairly and accurately apprises the jury of the relevant concepts, a new trial is not warranted. *Wagner by Wagner v. York Hospital*, 415 Pa.Super. 1, 14, 608 A.2d 496, 502 (1992).

 Appellant objects to the trial court's instruction that "[o]nce an insurance company refuses to provide its insured with coverage, the insured is no longer obligated to send the company suit papers." N.T. January 18–23, 1991 at 264. In giving this instruction, the trial court followed the reasoning set forth in *DeForte v. Allstate Insurance Company,* 81 A.D.2d 465, 442 N.Y.S.2d 307 (1981). In *DeForte,* the Supreme Court of New York, Appellate Division, explained that once an insurance company has denied coverage under a policy of insurance, forwarding suit papers becomes a useless act on the part of the claimant which the courts will not require. *Id.* at 469, 442 N.Y.S.2d at 311. *Accord Moye v. Thomas,* 153 A.D.2d 673, 544 N.Y.S.2d 675 (1989). We agree with the trial court's instruction in the instant case, but see no need to rely upon New York law as sufficient guidance is provided by Pennsylvania caselaw.

We note initially that the failure to furnish suit papers to the liability carrier does not of itself avoid the policy in the absence of prejudice to the insurer. *Frank v. Nash,* 166 Pa.Super. 476, 480, 71 A.2d 835, 836 (1950). Such prejudice does not exist *per se* but must be proven. *Id.* Moreover, our caselaw clearly indicates that an insured is not forced to slavishly pursue useless compliance with technical policy requirements once an insurance company has denied coverage. *See Kolbe v. Aegis Insurance Company,* 370 Pa.Super. 539, 537 A.2d 7 (1988), *allocatur denied,* 520 Pa. 576, 549 A.2d 136 (1988).

In *Kolbe,* the defendant insurance company disclaimed any liability by espousing the position that the policy's coverage was not applicable to the plaintiff's claim. After the insured entered into a settlement agreement with the injured party, the insurance company then argued that it had been absolved of liability because the insured had breached the policy's "consent to settle" clause. The Superior Court held that once the insurance company had denied coverage, it was unreasonable to permit the company to avoid answering the claim because of the insured's alleged violation of a contractual provision. As the *Kolbe* panel explained,

We cannot condone the action of the [insurance company] in first denying the applicability of its policy and thereafter relying upon a consent requirement in the same policy to defeat a coverage claim. In reaching this conclusion we are also mindful of the principle that a party to a contract may not complain of a breach caused by his own default.

*Id.*, 370 Pa.Super. at 543, 537 A.2d at 8.

As in *Kolbe,* the insurance company in the instant case first denied any liability to provide coverage and only thereafter attempted to defeat the claim by relying on a contractual provision within the policy itself. Thus, appellant's defense theory rests upon the insured's alleged material breach of a provision in a policy which, according to appellant, was never issued. Under the facts presented here, it would be unreasonable to permit appellant to prevail. Because the jury instructions provided by the trial court fairly and accurately apprised the jury of all the concepts pertinent to the instant case, a new trial is not warranted.

Judgment affirmed.

POPOVICH, J. concurs in the result.