595 A.2d 1

**Richard D. KLOPP and Sylvia J. Klopp**

v.

**KEYSTONE INSURANCE COMPANIES, Charles F. Grimm and the North Central Motor Club Insurance Agency.**

**Appeal of KEYSTONE INSURANCE COMPANIES.**

Supreme Court of Pennsylvania.

Argued May 8, 1990.

Decided July 2, 1991.

2

Robert A. Gallagher, Williamsport and Robert E. Kelly, Jr., Harrisburgh, for Amicus, Ins. Federation of Pa.

James Casale, for Klopp.

Norman M. Lubin and J. David Smith, Williamsport, for Grimm, et al.

William B. Anstine, Jr., York, for amicus, Pa. Trial Lawyers Assoc.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

NIX, Chief Justice.

This is an appeal from an order of the Superior Court affirming in part and reversing in part the order of the Court of Common Pleas of Lycoming County granting appellees Richard D. and Sylvia J. Klopp's Motion for Summary Judgment which denied appellant Keystone Insurance Companies the right to rescind a policy of automobile insurance. The issue presented by this appeal is whether an automobile insurance carrier may rescind an insurance binder and policy on the grounds that the contract was void *ab initio* because of a misrepresentation of fact made by the intended insured at the inception of the policy.

In this declaratory judgment action, the parties have stipulated to the material facts of the case. On February 7, 1985, the Klopps applied to the appellants for automobile insurance and were issued a binder the same day for a 1981 Subaru. The following day the Subaru, driven by Sylvia Klopp, was involved in an accident.[1]

On April 4, 1985, appellant Keystone notified the Klopps that it was rescinding its automobile policy and binder, and returned the Klopp's premium deposit. On the basis of that notice Keystone refused to provide insurance coverage for the February 8, 1985, accident because of misrepresentations made by the Klopps during the application process. These misrepresentations, which were not discovered until after the February 8, 1985, accident, include failure to disclose two speeding violations received by Richard Klopp on April 27, 1982, and August 27, 1982, respectively, and

---

1. Approximately three weeks later, on February 27, 1985, the appellants issued to the Klopps an automobile insurance policy and Pennsylvania insurance identification card.

failure to disclose a vehicle accident involving Sylvia Klopp on August 25, 1983. Under Keystone's underwriting guidelines, speeding violations and vehicle accidents occurring within three years of the binder and policy application date are considered material to the risk insured and consequently, applicants involved in such violations or accidents are not to be issued a binder and policy. In addition, the parties stipulated to the fact that the insurance binder and policy at issue herein would not have been issued had the Klopps disclosed their driving indiscretions. Following cross motions for summary judgment, the trial court ruled that Keystone was obligated to provide coverage to the Klopps on the ground that rescission is not a remedy available to Keystone.

Keystone next unsuccessfully appealed to the Superior Court which relied upon the reasoning of the lead opinion of Mr. Justice McDermott in *Metropolitan Property and Liability Ins. Co. v. Ins. Comm'r (Bonnie Beck)*, 517 Pa. 218, 535 A.2d 588 (1987) (hereinafter *"Bonnie Beck"*),[2] to conclude that 40 P.S. §§ 1008.1–1008.11 (hereinafter "Act 78") was intended to supersede all of an insurer's common law contract termination rights and remedies and that an automobile policy can only be terminated by the means set forth under the statute.[3] *Klopp v. Keystone Ins. Companies,*

**2.** In this plurality opinion, Mr. Justice McDermott's lead opinion was joined by one justice, this writer's concurring opinion was joined by two justices, one justice concurred in the result, and one justice did not participate.

**3.** 40 Pa.S. § 1008.5 provides as follows:

**Cancellation, refusal to renew, notice**

No cancellation or refusal to renew by an insurer of a policy of automobile insurance shall be effective unless the insurer shall deliver or mail, to the named insured at the address shown in the policy a written notice of the cancellation or refusal to renew. Such notice shall:

(1) Be approved as to form by the Insurance Commissioner prior to use;

(2) State the date, not less than sixty days after the date of such mailing or delivering on which such cancellation or refusal to renew shall become effective, except that such effective date may be fifteen days from the date of mailing or delivery when it is being

378 Pa.Super. 605, 608, 549 A.2d 221, 223 (1988).[4]

On appeal to this Court, it is Keystone's position that Act 78 does not abrogate an insurer's right to void through rescission an automobile insurance policy which is procured by fraudulent misrepresentations that are material to the risk insured. In support of its position, Keystone argues that Pennsylvania common law has long recognized that contracts for insurance, procured by fraud, are void *ab initio*. *See, e.g., Kizirian v. United Benefit Life Ins. Co.*, 383 Pa. 515, 119 A.2d 47 (1956); *Knepp v. Nationwide*, 324 Pa.Super. 479, 471 A.2d 1257 (1984); *Safeguard Mutual Ins. Co. v. Huggins*, 241 Pa.Super. 382, 361 A.2d 711 (1976).

The Klopps counter Keystone's argument by relying on Justice McDermott's lead opinion of this Court's plurality decision in *Bonnie Beck, supra*, which held, *inter alia*, that the pervasive and comprehensive nature of Act 78 indicated

cancelled or not renewed for the reasons set forth in clauses (1) and (2) of section 4;

(3) State the specific reason or reasons of the insurer for cancellation or refusal to renew;

(4) Advise the insured of his right to request in writing, within thirty days of the receipt of the notice of cancellation or intention not to renew, and of the receipt of the reason or reasons for the cancellation or refusal to renew as stated in the notice of cancellation or of intention not to renew, that the Insurance Commissioner review the action of the insurer;

(5) Either in the notice or in an accompanying statement advise the insured of his possible eligibility for insurance through the automobile assigned risk plan;

(6) Advise the insured that he must obtain compulsory automobile insurance coverage if he operates or registers a motor vehicle in the Commonwealth, that the insurer is notifying the Department of Transportation that the insurance is being cancelled or not renewed, and that the insured must notify the Department of Transportation that he has replaced said coverage;

(7) Clearly state that, when coverage is to be terminated due to nonresponse to a citation imposed under 75 Pa.C.S. § 1533 (relating to suspension of operating privilege for failure to respond to citation) or nonpayment of a fine or penalty imposed under that section, coverage shall not terminate if the insured provides the insurer with proof that the insured has responded to all citations and paid all fines and penalties and that he or she has done so on or before the termination date of the policy.

4. The Superior Court did, however, reverse that portion of the trial court's ruling which awarded attorney's fees to the Klopps.

a legislative intent to preempt automobile insurance law. Thus the Klopps assert that by preempting the law in this manner, the legislature sought to supersede all common law rights previously existing in regard to termination of insurance policies.

Keystone responds that Act 78 does not completely abrogate rescission rights in regard to policies issued under the Pennsylvania Motor Vehicle Responsibility Law. Keystone contends the protection afforded by Act 78 cannot be invoked until 60 days after coverage is initiated, *see* 40 Pa.S. § 1008.6, and that the policy herein was rescinded within that 60–day period. Since the coverage in this case was initiated on February 7, 1985, and rescinded 57 days later on April 4, 1985, Keystone contends that Act 78 was not yet effective and therefore the company retained the common law right to rescind the contract because of the aforementioned fraudulent misrepresentation.

 The issue we are now called upon to decide is whether the legislature intended to exclude rescission altogether as a remedy by the passage of Act 78. For the following reasons we hold that Act 78 does not abrogate an automobile insurer's common law right to rescind a policy for sixty days after the policy is written.

This case is most simply resolved by direct reference to the unambiguous language of § 1008.6 of Act 78, which provides as follows:

*Nothing in this act shall apply:*

&ast; &ast; &ast; &ast; &ast; &ast;

(3) *To any policy of automobile insurance which has been in effect less than 60 days* ... except that no insurer shall decline to continue in force such a policy of automobile insurance on the basis of grounds set forth in subsection (a) of section 3, footnote one [i.e. race], hereof and except that if an insurer cancels a policy of automobile insurance in the first sixty days, the insurer shall supply the insured with a written statement of the reason for cancellation (footnote omitted) (emphasis added).

■ In our view, a reading of the text of § 1008.6 reflects that insurance companies are free from the remedial constraints of Act 78 for a period of sixty days. Even assuming, as the Klopps argue, that Act 78 is intended to supersede all common law rights, those rights cannot be abrogated until the statute becomes effective. The Klopps' assertion that Act 78 is intended to preempt the common law is premised upon the inference that the compendious scheme of Act 78 manifests the legislature's intent to provide the sole methodology for terminating automobile insurance contracts. While this argument may be appealing for the period after Act 78 takes effect, it overlooks the legislature's omission of any detailed guidance during the sixty days after initial binders are issued.[5] The insurmountable weakness of this assertion is that the legislature could not have intended to create a remedial void for the sixty days prior to the operation of the Act when it passed section 1008.6.

If we were to follow the interpretation urged upon us by the Klopps, a situation would result whereby insurers who are victimized by fraud could resort only to the prospective relief of cancellation without the ability to engage the retrospective relief of rescission.[6] Consequently, in cases

5. It is the custom of the insurance industry, and sound public policy, to provide on-the-spot temporary insurance coverage in the form of a binder until the application information can be verified and a formal policy issued. *See, e.g., Collister v. Nationwide Ins. Co.,* 479 Pa. 579, 388 A.2d 1346 (1978); *McAvoy Vitrified Brick Co. v. North Am. Life Assurance Co.,* 395 Pa. 75, 149 A.2d 42 (1959); *Stonsz v. Equitable Life Assurance Soc'y,* 324 Pa. 97, 187 A. 403 (1936). Absent any defect in the application process, an insurance policy is deemed effective from the date the binder is issued. *Id.* We presume the legislature, aware of this custom, intended to provide the insurance carriers with a grace period to thoroughly investigate its prospective clients. This grace period also serves consumers by providing some certainty that if there is a problem with their application after sixty days, they will be entitled to a formal notice procedure before their coverage is terminated.

6. The legal significance of the difference between cancellation and rescission was aptly pointed out by the Commonwealth Court in *Metropolitan Property and Liability Ins. Co. v. Commonwealth of Pennsylvania, Ins. Comm'r,* 97 Pa.Commw.Ct. 219, 223, 509 A.2d 1346,

such as this, insurance carriers would be required to pay claims on policies procured by fraud. Such an absurd result must be avoided. 1 Pa.C.S. § 1922(1). From the clear language of Act 78 itself it is apparent that the restrictions are intended to be applied to a contract which is cognizable under the Act and free of fraud in the inducement by the insured. Section 1008.6 explicitly limits the triggering mechanisms under the Act to afford the insurer an opportunity to verify the assertions upon which the determination is made to issue the policy. Therefore, we hold that an insurer is entitled to all its common law rights until such time as Act 78 applies.

In this case, the Klopps applied to Keystone for insurance on February 7, 1985. They were seeking to insure themselves from financial losses arising from the use of their automobile. Keystone is a writer of insurance which issues, or declines to issue, policies based on a driver's propensity to incur losses as measured by that driver's past experience. The Klopps failed to disclose to Keystone the truth about their checkered driving history. As noted previously, the stipulation of the parties indicates that had Keystone been aware of the Klopps' driving record, coverage would not have been extended. Under basic contract principles, the omission was a material misrepresentation which would certainly justify the rescission of the contract. *See, e.g., Metropolitan Property and Liability Co. v. Ins. Comm'r of Pennsylvania (Edgar Miller)*, 525 Pa. 306, 580 A.2d 300 (1990). *Prudential Ins.*

1348 (1986), *aff'd. by an equally divided court,* 517 Pa. 218, 535 A.2d 588 (1987):

Rescission of a contract and cancellation of a contract are two separate and distinct legal concepts. A rescission amounts to the unmaking of a contract and is not merely a termination of the rights and obligations of the parties towards each other, but is an abrogation of all rights and responsibilities of the parties towards each other from the inception of the contract. It is a form of retroactive relief. Cancellation is an act destroying the force and effectiveness of the contract, and is a form of prospective relief, affecting the future rights and obligations of the parties towards each other. The General Assembly is cognizant of the difference between these legal concepts.

*Co. v. Pagano,* 407 Pa. 473, 181 A.2d 319 (1962); *Allstate Ins. Co. v. Stinger,* 400 Pa. 533, 163 A.2d 74 (1960); *Kizirian v. United Benefit Life Ins. Co., supra; Knepp v. Nationwide, supra; Safeguard Mutual Insurance Co. v. Huggins, supra; A. G. Allenbach, Inc. v. Hurley,* 373 Pa.Super. 41, 540 A.2d 289 (1988); *Baldwin v. Prudential Ins. Co.,* 215 Pa.Super. 434, 258 A.2d 660 (1969). Keystone notified the Klopps on April 4, 1985, within sixty days of the application date. The applicability of the comprehensive scheme for cancellation and notification contained in Act 78 was expressly deferred until the expiration of that sixty-day period. 40 P.S. § 1008.6. Thus there is no basis for an inference of a legislative intention to preempt prior common law remedies during this period.

Accordingly, we reverse the judgment of the Superior Court and enter an order declaring the policy void *ab initio.*

LARSEN, and CAPPY, JJ., join the majority opinion and file separate concurring opinions.

FLAHERTY, J., concurs in the result.

McDERMOTT, J., files a dissenting opinion.

LARSEN, Justice, concurring.

I join the majority opinion with the proviso that the fraudulent policyholder is estopped from making any personal claims arising out of the policy. Third parties suits and derivative suits are permitted.

CAPPY, Justice, concurring:

I join in the opinion of Mr. Chief Justice Nix and the rationale therefor, but only insofar as it applies to the facts of the case *sub judice.* I have no difficulty concluding on the facts presented in this case that, where X has intentionally defrauded the insurer with respect to facts material to the risk insured, any claims made by X against the insurer within the first 60 days must fail. Because of X's fraud, the policy is void *ab initio* with respect to claims made by X.

I write separately to emphasize that, in this case, we do not reach any conclusion with respect to the claims of innocent, injured third parties, facts not present in the case *sub judice.* I believe that overwhelming public policy considerations would dictate a different result where such claims are involved. Through the Motor Vehicle Financial Responsibility Law ("MVFRL"),[1] the legislature has mandated that *all* owners of motor vehicles in Pennsylvania obtain liability insurance. *See* 75 Pa.C.S. §§ 1702 ("financial responsibility" defined) and 1781–1787 (requiring owners of motor vehicles to provide proof of financial responsibility). This requirement is not intended to protect the interests of the policy holder or the insurance company. Rather, it is wholly intended to protect the innocent and injured third party public. Its specific purpose is to ensure that all owners of motor vehicles will be able to respond financially for their "liability on account of accidents arising out of their use of the motor vehicle." 75 Pa.C.S. § 1702.

This overriding governmental interest, which is apparent from the very definition of "financial responsibility," would dictate that common law concepts of the rights of third party beneficiaries,[2] to-wit, the innocent and injured third party, be rendered inapplicable. In effect, the rights of third party beneficiaries would be considered to be original, rather than derived from the rights of the insured. I believe that this result would be consistent with the main concern of the legislature in enacting the MVFRL, that is, to protect the innocent and injured public.

Thus, I agree with the result reached by the majority as it is applied to the facts of this case. It is contrary to common sense and to the law to conclude that the legislature would intend to reward a policy holder who has de-

1. Act 1984, Feb. 12, P.L. 26, No. 11, § 3, 75 Pa.C.S. § 1701, *et seq.,* "Motor Vehicle Financial Responsibility Law."

2. Generally, at common law, the rights of the third party beneficiary can be no greater than those of the original parties to the contract. Therefore, if the contract is void *ab initio* as to a party, it would be void *ab initio* as to third party beneficiaries. [cite]

frauded his insurer and who makes a claim for personal loss against those whom he has defrauded.

Likewise, it would be preposterous to conclude that, with regard to innocent and injured third parties who participated in no way in the fraud perpetrated on the insurance company, the legislature would have intended that they be denied protection as a result of the policy holder's fraud where the Act itself has been created for their protection and benefit. Thus, it is my view that, with regard to innocent and injured third parties, the insurance company would be bound to honor the liability provisions of the insurance contract and may cancel said provisions only pursuant to § 1008.5 of Act 78.

McDERMOTT, Justice, dissenting.

Through the use of cases from dissimilar areas of the law, the majority has succeeded in reading into Act 78 the common law right of rescission, a right which was determined earlier by this court in, *Metropolitan Property and Liability Insurance Company v. Insurance Commissioner of the Commonwealth of Pennsylvania and Bonnie Beck et al.*, 517 Pa. 218, 535 A.2d 588 (1987), not to have survived the legislature's passage of that Act. In *Beck, id.* our holding that rescission was not a remedy available to the subject Insurer was aided by the fact that the legislature passed Act 78 shortly after our Superior Court determined that the remedy was still viable. *See Safeguard Mutual Insurance Co. v. Huggins,* 241 Pa.Super. 382, 361 A.2d 711 (1976). Similarly, the Statutory Construction Act[1] provides certain presumptions in ascertaining legislative intent. One of which is that the General Assembly intends to favor the public interest as against any private interest. 1 Pa.C.S.A. § 1922(5). That "public interest" will now be ignored as innocent victims are denied compensation when insurers elect to rescind contracts of insurance whenever one of their insureds, with a previously undisclosed incident laden driving record, is involved in an accident. It is this

1. Act of Dec. 6, 1972, No. 290 § 3.

result as we stated in *Beck* which could be avoided, and thus the impact of Act 78's cancellation requirements lessened, if insurers avoid the practice of providing on the spot coverage until a driving history is obtained.

Accordingly, I dissent.