**Mutual Benefit Insurance Co. v. Druce**

32

C.P. of Dauphin County, no. 1938 CV 2001.

*Robert E. Kelly Jr.,* for plaintiff.
*Matthew R. Gover,* for defendants Druce.
*Timothy A. Shollenberger,* for defendants Cains and Cains Williams.

LEWIS, *J.,* May 21, 2003—The plaintiff, Mutual Benefit Insurance Company, and the defendants, Louis Cains Jr., individually and as administrator of the estate of Kenneth R. Cains, deceased, Debra Cains and Kenneth Williams, successor in interest to Delores Cains Williams, (collectively, the Cains family) have filed cross-motions for summary judgment to determine if an insurer's denial of its duty to indemnify made on the basis of fraud and lack of notice by its insured applies only to the claims of the insured or to the claims of both the insured and innocent third parties injured by the tortious acts of the insured. As explained more thoroughly in this opinion, this court denies the summary judgment motion filed by Mutual and grants the motion filed by the Cains family.

This controversy emerges from the tragic accident that occurred on July 27, 1999, when a vehicle operated by then-State Representative Thomas W. Druce III struck and killed a pedestrian, Kenneth R. Cains, in the 1300 block of North Cameron Street, Harrisburg. Mutual and the Cains family have stipulated to the facts surrounding this episode that can be briefly summarized as follows:

On July 27, 1997, Mutual issued a private passenger motor vehicle policy to defendants Thomas and Amy Druce. The policy was renewed yearly and covered the period from July 22, 1999 to January 22, 2000. Mr. and

Mrs. Druce paid all premiums necessary to keep the policy enforced. The policy provided liability coverage for bodily injury in the amount of $100,000 per person and $300,000 per accident. Part E of the policy required that the insured promptly notify Mutual of "how, when and where" an accident or loss occurs. Part F also indicates that the policy "does not provide coverage for any 'insured' who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy."

On the evening of July 27, 1999, Mr. Druce was operating a black 1997 Jeep Grand Cherokee in a southbound direction on North Cameron Street at approximately 10:30 p.m. In the vicinity of the 1300 block of North Cameron Street, Mr. Druce's vehicle struck Kenneth Cains as Mr. Cains entered North Cameron Street on foot into the path of the Druce vehicle. As a result of this accident, Mr. Cains received serious injuries and died later that evening.

Mr. Druce's vehicle sustained extensive damage to its right front fender, windshield, antenna and right front headlight. Mr. Druce did not stop his vehicle after the accident, but instead continued to proceed southbound on North Cameron Street before making a right turn onto Herr Street. Mr. Druce visited a local convenience store after the accident and purchased a roll of black electrical tape to make remedial repairs to the Grand Cherokee. Mr. Druce returned to his home in Bucks County, Pennsylvania later that evening by way of the Pennsylvania Turnpike.

On July 28, 1999 Mr. Druce submitted a claim form to his insurance agent, PKG Insurance Associates Inc., reporting that he had been in a collision while proceeding

through a construction zone on the Pennsylvania Turnpike. In his report to PKG, Mr. Druce indicated that the damage to the passenger side and windshield of his vehicle occurred as a result of striking a barrier and sign while he was driving through a construction zone on the turnpike. PKG forwarded the information to Mutual which began to process the claim. Mr. Druce later provided a statement to Mutual recounting that his vehicle struck sand-filled barrels and a sign as he was reaching for his car telephone that had fallen to the floor of the vehicle. On the basis of the information Mr. Druce provided to PKG and later to Mutual, Mutual paid a collision claim in the amount of $3,725.08 to Mr. Druce less the $500 collision deductible. The claim was paid in August 1999. Druce retained the services of an automobile body shop in Bucks County for the purpose of repairing the damage to his vehicle within a few days following the accident. Once the car was repaired, Mr. Druce traded in the vehicle for a new automobile.

On January 19, 2000 Mr. Druce was charged by the Harrisburg Police Department for various offenses growing out of the accident which caused the death of Kenneth R. Cains. On September 11, 2000, Mr. Druce entered pleas of guilty to several of the charges against him including accidents involving death or personal injury, 75 Pa.C.S. §3742(a); insurance fraud, 18 Pa.C.S. §4117(a)(2); tampering with physical evidence, 18 Pa.C.S. §4910, as well as two summary offenses.

At the time of his death, Kenneth R. Cains was neither a named insured nor an insured under any policy of private passenger or motor vehicle insurance. He did not own, nor did he reside with anyone that was the owner of a motor vehicle required to be registered or insured.

Mutual and the Cains family agreed that Mutual would file a complaint for declaratory judgment pursuant to the Pennsylvania Declaratory Judgment Act, 42 Pa.C.S. §7531 et seq. (1998), seeking a determination that Mutual owed no duty under the policy to defend or indemnify Mr. and Mrs. Druce with respect to any of the claims made by the estate of Kenneth R. Cains as a result of Mr. Druce's false and misleading statements concerning the facts and circumstances surrounding the accident in violation of the express terms and conditions of the policy. On April 1, 2001, Judge Todd A. Hoover of the Dauphin County Court of Common Pleas issued an order allowing the Cains family and Mutual to enter into a stipulation whereby if it was determined by this court that Mutual owed Mr. and Mrs. Druce a duty of defense and indemnification, that Mutual would pay the remaining $50,000 of the $100,000 bodily injury liability limit to said defendants in full and final satisfaction of all claims against the Druces and Mutual.

In its summary judgment motion, Mutual avers that because the Druces admitted that they submitted false and misleading material information regarding the accident and subsequent insurance claim, they waived their contractual right to a defense and indemnification for third-party claims made against them for the accident. Mutual vigorously contends that an insured who commits fraud under an insurance policy cannot then turn to that same policy for a defense and indemnification. Furthermore, Mutual argues that claimants such as the Cains family are "strangers to the contract of insurance" and not third-party beneficiaries to a liability insurance policy and are owed no duty when a liability policy is in question. *Brown v. Candelora,* 708 A.2d 104 (Pa. Super.

1998), *appeal granted in part,* 555 Pa. 478, 725 A.2d 176 (1999). Plaintiff also maintains that the potential impact that a denial of coverage for the Druces may have on the claims of the Cains family is not relevant. Plaintiff insists that the Cains are not without recourse directly against the tort-feasor, and to fashion a remedy based on the sympathy of their plight would be inimical to other insureds who have complied with their obligations under insurance policies. *Dellenbaugh v. Commonwealth of Pennsylvania CAT Fund,* 562 Pa. 558, 756 A.2d 1172 (2000).

The Cains counter that an insurer's denial of its duty to indemnify made on the basis of fraud or misrepresentation only applies to the claim of the insured and not to claims of both the insured and innocent third parties injured by the tortious acts of the insured. Such a denial occurring more than 60 days after issuance of the policy is the functional equivalent of a rescission and thus runs afoul of *Erie Insurance Exchange v. Lake,* 543 Pa. 363, 671 A.2d 681 (1996), which held that an automobile policy of insurance cannot be rescinded with respect to innocent and injured third parties who were harmed through no fault of their own. The Cains family additionally emphasizes that Mutual suffered no prejudice by any breach of these provisions.

## DISCUSSION

Mutual's position is that this is not a rescission, a distinction without a difference. Their refusal to indemnify the Druces leads to the same outcome as a rescission with respect to the claim advanced by the Cains family since it abrogates the rights of the insured and the obligations of the insurer with respect to that claim in a ret-

roactive manner. As early as 1991, the Pennsylvania Supreme Court recognized the plight of innocent and injured third parties following rescission of an automobile insurance policy. In *Klopp v. Keystone Insurance Companies,* 528 Pa. 1, 595 A.2d 1 (1991), our Supreme Court ruled that failure to disclose material information on an application for automobile insurance entitles the insurer to the common-law remedy of a contract rescission if the carrier acts within the first 60 days of issuing the binder. *Klopp* held that the insured, the fraudulent policyholder, is estopped from making personal claims arising out of the policy. However, two concurring opinions suggested that the rights of innocent and injured third parties were neither considered nor determined by *Klopp.* Justice Cappy's concurring opinion, referencing Act 78[1] of the Unfair Insurance Practices Act, 40 P.S. §1171.1 et seq. (1999), remedial legislation designed to govern cancellation of policies between insurer and insured to preclude rescission of an insurance policy as to third parties beyond the 60-day grace period within the Act regardless of fraud or difficulty in discovering such, stated:

"Likewise, it would be preposterous to conclude that, with regard to innocent and injured third parties who participated in no way in the fraud perpetrated on the insurance company, the legislature would have intended that they be denied protection as a result of the policyholder's fraud where the Act itself has been cre-

---

1. Act of June 5, 1968, P.L. 140, 40 P.S. §§1008.1-1008.11. Act 78 has since been repealed (effective August 16, 1998) by the Act of June 17, 1998, P.L. 464, 40 P.S. §§991.2001-991.2013 ("Act 68"). Act 68, like its predecessor, Act 78, is liberally construed in order to effectuate its goal of protecting the public interest.

ated for their protection and benefit. Thus, it is my view that, with regard to innocent and injured third parties, the insurance company would be bound to honor the liability provisions of the insurance contract and may cancel said provisions only pursuant to section 1008.5 of Act 78." *Id.,* 528 Pa. at 11, 595 A.2d at 5-6.

Several years later in *Erie Insurance Exchange v. Lake, supra,* Justice Cappy, now writing for the majority, made it abundantly clear that the claims of innocent and injured third parties could not be ignored even following rescission based on fraud or misrepresentation. He indicated that an insurer may rescind the policy of insurance as to the actual perpetrator of the fraud where the fraud could not reasonably have been discovered within the 60-day period immediately following the issuance of the policy as outlined by Act 78. Justice Cappy conceded that on the surface, it may appear harsh to force the insurance company to abide by a contract procured by fraud, but "it would be beyond harsh to preclude third party appellees who are innocent of trickery, and injured through no fault of their own, from receiving protection under the policy." *Id.* at 375, 671 A.2d at 687.

The factual scenario in *Erie Insurance Exchange* is instructive. Lake and his friend Stover concocted a plan to overcome Stover's inability to obtain automobile insurance due to a history of drunk driving episodes. The duo decided that Lake would obtain the insurance in his name on vehicles owned and operated exclusively by Stover.

They began this conspiracy in 1987 and by 1989, Erie Insurance had already insured three vehicles in the name of Lake but which were essentially owned and operated by Stover. In September of 1989, Stover was driving one

of the vehicles while intoxicated and collided with a vehicle operated by William Sherman. Sherman was killed along with his wife and several grandchildren. Erie filed a declaratory judgment action seeking to rescind the policy because of the fraud and misrepresentation made by Lake in obtaining the policy.

One of the factors the court had to consider was the provisions of Act 78, which placed limits on the ability of insurers to cancel an insurance policy without prior notice to its insured. 40 P.S. §1001 et seq. Allowing for the common-law right of rescission, the court made a critical distinction between an insurer's ability to rescind the policy as to claims asserted by the insured himself as opposed to claims asserted by innocent and injured third parties who did not participate in any act of fraud or misrepresentation perpetrated by the insured. The court referenced a section of Act 78 which only allowed an insurer the right to rescind the policy within 60 days of issuance. Recognizing that some situations may arise similar to the Stover/Lake scheme where discovery within the first 60 days would be nearly impossible, the court indicated:

"We find, as a matter of common sense and public policy, that it would indeed be absurd to interpret Act 78 as permitting a person to financially benefit from his own illegal act of fraud. Therefore, an insurer may rescind the policy of insurance *as to the actual perpetrator of the fraud,* where the fraud could not reasonably have been discovered within the 60-day period immediately following the issuance of the policy; limited to those instances where the undiscovered fraud was of such a nature that it is clear that an insurer would never have accepted the risk inherent in issuing the policy." (emphasis added)

It is abundantly clear to this court that the thrust of these Supreme Court decisions created a sound public policy to protect the interests of innocent and injured third parties. In *Erie Insurance Exchange,* the court reasoned that automobile insurance is not issued solely for the benefit of the individual purchaser but also for the benefit and protection of third parties who may sustain injuries at the hands of the insured.

In the instant case, Mutual can legitimately assert that it was deceived by Mr. Druce and now faces a significant loss because of the claim of the Cains family. But the premiums on the Druce policy were paid in full at the time of the accident, and had Mr. Druce not misrepresented his involvement in the accident, the insurance company may well have been liable for payment of the Cains claim. In *Erie Insurance Exchange*, the Supreme Court also discussed the "distribution of financial risk" as a legitimate and significant public policy concern. The court indicated that in the automobile insurance arena, the industry benefits from the fact that state law mandates the purchase of insurance, thus providing a guaranteed market.

Plaintiff counters that this is not a rescission case since the policy was never rescinded. Mutual advances that this is a "claim fraud" and the sole question is whether Mr. Druce lost his right to claim defense and indemnification protection under his policy based on the fraud and misrepresentation. Plaintiff relies on *Parasco v. Pacific Indemnity Company,* 920 F. Supp. 647 (E.D. Pa. 1996), to support its argument. In *Parasco,* the insureds sued under a homeowners policy maintaining that the insurance company wrongfully denied a fire claim based upon misstatements of fact made by the insureds. During the

post-fire investigation, the Parascos made certain misrepresentations regarding their financial status. In their lawsuit, they maintained that they made no such misrepresentations, and even if they did, they were immaterial. The court dismissed these arguments and found that the insurer was not obligated to pay the claim due to the misrepresentations.

This court does not find *Parasco* persuasive. *Parasco* deals with a fire insurance policy and not an automobile insurance policy. *Parasco* does not voice the public policy pronouncements advanced by our Supreme Court in *Erie Insurance Exchange* that discuss a distribution of financial risk in the auto insurance arena. Additionally, and perhaps most importantly, the decision in *Parasco* worked against the insured, the parties presumably guilty of fraud. There was no innocent and injured third party harmed by the deceit of the Parascos.

Plaintiff also relies on *Dellenbaugh v. Commonwealth of Pennsylvania, supra,* which indicated that the potential impact of a claim such as the one advanced by the Cains family does not alter the tort-feasor's right to obtain insurance coverage if the insured is not otherwise entitled to such coverage. *Dellenbaugh* involved a case from the Medical Professional Liability Catastrophe Loss Fund (CAT fund), an agency of the Commonwealth. The Commonwealth Court held that the CAT fund has responsibility for providing excess liability coverage in a medical malpractice action against a surgeon even though the surgeon failed to pay his annual surcharge to the CAT fund. The Supreme Court reversed holding that the CAT fund was not liable to pay a claim where the physician failed to pay premiums. The court essentially said that it would be inequitable to other members of the CAT fund

to pay for claims against those physicians who have ignored their obligation to pay into the fund. This stands in stark contrast to the instant case. Mr. Druce paid his premiums to Mutual Benefit for several years prior to the accident that killed Mr. Cains. An assertion that other policyholders are being made to pay more because of the payment to the Cains family runs contrary to *Erie Insurance Exchange*. Secondly, the CAT fund is an agency of the Commonwealth of Pennsylvania and quite unlike any other insurance company. The CAT fund does not issue policies of insurance to its customers in exchange for the payment of the premium. Rather, the CAT fund looks at settlements over a period of time and then surcharges doctors, hospitals, etc. to pay their fair share of the prior claims.

Lastly, the Cains family reasons that Mutual suffered no prejudice to its position because of the extensive investigation that was carried out by the police at the scene of the crash. The Cains family maintains that this thorough and complete inquiry compensated for any lost opportunity Mutual had for conducting an investigation immediately following the incident due to the misrepresentations of Thomas Druce.

Mutual counters that it has sufficiently established prejudice and specifically relies on *Parasco, supra,* to establish the "materiality" of Druce's misrepresentations since they dealt with matters relevant and germane to the insurer's investigation. Mutual points to the failure of Druce to make timely and accurate notification as well as his conviction of insurance fraud as damaging their ability to investigate, take measurements, examine the vehicle, interview witnesses, and present a credible insured as a witness. This court finds that there was indeed

an extensive investigation by the police into the vehicular homicide. Further, the fact that Thomas Druce was convicted of insurance fraud presents no greater prejudice to the insurer than any other civil defendant with prior criminal convictions of a crimen falsi nature.

Further, this court believes that the public policy pronouncements of our Supreme Court in *Erie Insurance Exchange* trumps any consideration of the "materiality" of the Druce misrepresentations. In *Parasco,* the appellants made material misrepresentations and then attempted to rely on their own fraud to collect on their claim for a house fire. There were no innocent and injured third persons. In the instant case, Druce made misrepresentations, indisputably material, to avoid criminal liability and perhaps political repercussions. The Cains family made no misrepresentations, committed no fraud, and continue to wear the mantle of the innocent victims.

Accordingly, the following is entered:

### ORDER

And now, May 21, 2003, the summary judgment motion filed by Mutual Benefit Insurance Company is hereby denied.

The summary judgment motion filed by Louis Cains Jr., individually and as administrator of the estate of Kenneth R. Cains, deceased; Debra Cains and Delores Cains Williams is granted.