J-A14044-23

2023 PA Super 264

ERIE INSURANCE EXCHANGE : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DOMINIC EACHUS :
:
Appellant : No. 271 EDA 2023

Appeal from the Order Entered December 12, 2022
In the Court of Common Pleas of Chester County
Civil Division at No(s):  2021-08065-MJ

BEFORE:  PANELLA, P.J., DUBOW, J., and SULLIVAN, J.

OPINION BY SULLIVAN, J.:                **FILED DECEMBER 12, 2023**

Dominic Eachus ("Eachus") appeals from the order granting the motion for summary judgment filed by Erie Insurance Exchange ("Erie") and denying Eachus's cross-motion for summary judgment.  We affirm.

The parties stipulated to the factual and procedural history underlying this insurance coverage dispute.  On January 13, 2011, Eachus contacted his insurance agent and requested a quote for a new auto policy.  On that same date, the agent provided Eachus with a quote for an auto policy from Erie which provided, *inter alia*, uninsured motorist coverage ("UM") and underinsured motorist coverage ("UIM") policy limits of $15,000 per person/$30,000 per accident.  Later that same day, Eachus signed a policy application for an auto policy from Erie, effective January 20, 2011 through January 20, 2012, providing bodily injury liability limits in the amount of $100,000 per person/$300,000 per accident.  In the policy application, Eachus

requested UM/UIM limits in the amount of $15,000 per person/$30,000 per accident. Additionally, Eachus signed an "Important Notice" form which informed him of the availability of higher UM/UIM limits—up to the same amount as the bodily injury liability coverage limits of $100,000 per person/$300,000 per accident—if he wished to purchase them. Eachus also signed a "Request for Lower Limits" form specifically requesting lower UM/UIM policy limits at $15,000 per person/$30,000 per accident. The forms signed by Eachus indicated a "binder" number of Q98-2037302. One week later, Erie issued an auto policy to Eachus, as the named insured, effective January 20, 2011 through January 20, 2012, bearing policy number Q012011324 ("the Erie policy"). The Erie policy provided bodily injury liability coverage in the amount of $100,000 per person/$300,000 per accident. The Erie policy also provided UM/UIM coverage limits of $15,000 per person/$30,000 per accident, stacked over two vehicles, as Eachus had requested. Eachus paid a reduced premium for the Erie policy based on his election to purchase lower UM/UIM coverage limits. Between 2011 and 2015, Eachus renewed the Erie policy annually by paying the renewal premium.

In 2015, Eachus was involved in a motor vehicle accident in which he sustained injuries. The tortfeasor's insurance policy limits were insufficient to cover the extent of Eachus's medical bills. Consequently, Eachus submitted a claim for UIM benefits under the Erie policy. Erie accepted the UIM claim and provided the full, per person policy limit of $15,000 UIM benefits, stacked over

two vehicles, for a total claim payment to Eachus of $30,000. Eachus challenged the limits of UIM coverage provided by the Erie policy. Erie then initiated this declaratory judgment action, seeking a declaration of its rights and obligations under the Erie policy. Following discovery, Erie filed a motion for summary judgment and Eachus filed a cross-motion for summary judgment. On December 12, 2022, the trial court entered an order determining that Eachus was not entitled to any further UIM benefits under the policy, thereby implicitly granting Erie's motion for summary judgment and denying Eachus's cross-motion for summary judgment. Eachus filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.[1]

Eachus raises the following issues for our review:

A. Did the trial court commit [an] error of law in determining there was no ambiguity and the Request for Lower Limits forms associated with the Erie insurance binder application No. Q98-2037302 also applied to [the] Erie policy . . . Q012011324?

B. Since there is not a Request for Lower Limits form applicable to [the] Erie policy Q012011324[,] should the applicable limits available to . . . Eachus for the . . . 2015 auto accident be $200,000.00?

Eachus's Brief at 4 (unnecessary capitalization omitted).

---

[1] The trial court judge who entered the order granting Erie's motion for summary judgment and denying Eachus's cross-motion for summary judgment passed away after the entry of that order. A successor trial court judge authored a Rule 1925(a) opinion incorporating the reasoning of the predecessor judge as expressed in the summary judgment order.

Our standard of review of an order granting or denying summary judgment is well-settled:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Siciliano v. Mueller*, 149 A.3d 863, 864 (Pa. Super. 2016).

Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S.A. § 1701, *et seq.*, is a comprehensive body of legislation governing the rights and obligations of the insurance company and the insured under liability insurance policies covering motor vehicles. *See Rush v. Erie Ins. Exch.*, 265 A.3d 794, 796 (Pa. Super. 2021). The provisions of the MVFRL are mandatory, and where insurance policy provisions fail to comply with the provisions of the MVFRL, the policy provisions will be found unenforceable. *See id*.

Section 1731 of the MVFRL "requires every motor vehicle insurance policy issued in Pennsylvania to include an offer of both UM and UIM motorist coverage equal to the bodily injury liability amount. *See* 75 Pa.C.S.A. §

1731(a). However, an insured may decline all UM/UIM coverage[2] or opt for UM/UIM limits in an amount less than the bodily injury liability limits of the policy. In the absence of an express written rejection of all UM/UIM coverage or an express written election for UM/UIM limits which are less than the bodily injury liability limits of the policy, the insurer must provide UM/UIM coverage "equal to the bodily injury liability limits." 75 Pa.C.S.A. § 1731(c)(1).

Regarding an insured's election to opt for UM/UIM coverage limits which are less than the bodily injury liability limits of the policy, section 1734 of the MVFRL provides: "[a] named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury." 75 Pa.C.S.A. § 1734. Unlike the stricter statutory provisions regarding rejection of all UM/UIM coverage under section 1731, section 1734

_____

[2] In order to reject all UM/UIM coverages, section 1731 requires that the insured be provided with specific information to explain the separate purposes of UM/UIM coverage and sign written rejection forms—with specified language in prominent type and location—in order to establish that the insured knowingly and voluntarily rejected each type of coverage. *See* 75 Pa.C.S.A. § 1731(b)-(c). Additionally, the insured must sign and date separate forms to reject all UM and all UIM coverage. *See* 75 Pa.C.S.A. § 1731(b)-(c). In light of these requirements, section 1731 provides that the insured will not be deemed to have waived all UM and/or all UIM coverage if the insurer fails to produce a valid rejection form. In interpreting section 1731, this Court has held that an insured's affirmative decision to waive all UM/UIM coverage is presumed to be in effect throughout the lifetime of that policy until "affirmatively changed" by the insured. ***Koch v. Progressive Direct Ins. Co.***, 280 A.3d 1060, 1067 (Pa. Super. 2022) (*citing **Smith v. Hartford Ins. Co.**,* 849 A.2d 277, 281 (Pa. Super. 2004)).

does not specify the type of form or language required for the insured to opt for lower UM/UIM coverage limits. However, our Supreme Court has ruled that "a [section] 1734 written request must include . . . the signature of the insured[ and] an express designation of the amount of coverage requested . . .." **Orsag v. Farmer New Century Ins.**, 15 A.3d 896, 901 (Pa. 2011) (*quoting* **Lewis v. Erie Ins. Exch.**, 793 A.2d 143, 153 (Pa. 2002)).

Section 1791 provides certain legal presumptions if an insured signs an "Important Notice" form which advises the insured of the availability of UM/UIM coverage in amounts equal to the bodily injury liability limits. **See** 75 Pa.C.S.A. § 1791. Specifically, section 1791 provides that, if "**at the time of application for original coverage**" the insured is provided with an "IMPORTANT NOTICE" which states certain specified language "in bold print of at least ten-point type," then "[i]t shall be presumed that the insured has been advised of the benefits and limits [of UM/UIM coverage] available . . . **and no other notice or rejection shall be required**." **Id**. (emphasis added). The language specified by section 1791 to be included in the "Important Notice" is as follows:

> Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you . . .
>
> * * * *
>
> (6) Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer,

up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also, at least $5,000 for damage to property of others in any one accident.

Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.

*Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected*.

*Id*. (emphasis added).

"It is the custom of the insurance industry, and sound public policy, to provide on-the-spot temporary insurance coverage in the form of a binder until the application information can be verified and a formal policy issued." *Klopp v. Keystone Ins. Companies*, 595 A.2d 1, 4 n.5 (Pa. 1991). Under Pennsylvania law, a binder constitutes evidence that insurance coverage has attached at a specific time and continues in effect until either the policy is issued, or the risk is declined and notice thereof is given. *See Strickler v. Huffine*, 618 A.2d 430, 433 (Pa. Super. 1992). Thus, absent any defect in the application process, an insurance policy is deemed effective from the date the binder is issued. *See Klopp*, 595 A.2d at 4 n.5.

As Eachus's issues are interrelated, we will address them together. Eachus argues that "the request for lower limits form contained in the application/binder contains only the application/binder number, does not include any incorporation or any language indicating it would apply to any

subsequently issued policy, nor does the application/binder itself provide any language indicating any documents or forms would carry over to any subsequently issued policy." Eachus's Brief at 12-13. Eachus maintains that the request for lower limits form that he signed only applied to lower UIM limits under the binder and not to the subsequently issued Erie policy or any renewal policies. Eachus asserts that "binders are temporary insurance and exist until a policy is issued or rejected, at which time the binder ceases to exist." *Id*. at 15. According to Eachus, "Erie cannot produce a written request for lower limits applicable to [the Erie] policy . . .." *Id*. at 13. Utilizing this logic, Eachus posits that, "[s]ince Erie cannot produce a request for lower limits form applicable to [the Erie] policy . . ., the applicable available limits for [UIM] coverage . . . should be equal to bodily injury limits which would be $200,000.00 (for 2 vehicles stacked at $100,000.00)." *Id*. at 14.

Alternatively, Eachus claims that an ambiguity existed as to what instrument the request for lower limits form applied due to the inclusion of the binder number on the forms he signed and the lack of any language indicating that the forms would apply to the Erie policy.[3] Eachus asserts that "Erie failed to include incorporation language and created ambiguity as to whether the request for lower limits form applied to the binder, the policy or both." *Id*. at

---

[3] Generally, if there is any doubt or ambiguity as to the meaning of an insurance policy, the doubts or ambiguities will be resolved in favor of the insured. *See Blue Anchor Overall Co. v. Pa. Lumbermens Mut. Ins. Co.*, 397, 123 A.2d 413, 415 (Pa. 1956).

18. Eachus reasons that, "[s]ince Erie was the drafter of all of the forms and had total control over the language used[,] any ambiguity related to application relating to the request for lower limits form and the extent of its applications falls totally on Erie." *Id*.

The trial court considered Eachus's arguments and concluded that they lacked merit. The court reasoned:

> Contrary to Eachus'[s] assertion, there is no ambiguity in the application, which sets forth a binder number, but also identifies the policy period as January 20, 2011 to January 20, 2012 and an annual premium. Further, when Eachus signed the [Important] Notice, he acknowledged his "knowledge and understanding" of both the availability of alternate limits as well as the limits he selected in the application:
>
> YOUR SIGNATURE ON THIS NOTICE OR YOUR PAYMENT OF ANY RENEWAL PREMIUM EVIDENCES YOUR ACTUAL KNOWLEDGE AND UNDERSTANDING OF THE AVAILABILTY OF THESE BENEFITS AND LIMITS AS WELL AS THE BENEFITS AND LIMITS YOU HAVE SELCETED.
>
> (Application, p. 13)[.] This acknowledgement appears above Eachus'[s] signature and immediately below his signature is the "Policy Effective Date 1/20/11." The coverage[s] Eachus elected in the application were clearly intended for the policy that was issued and not simply for a binder. There was no need for a second set of forms to be signed, as suggested by Eachus, because the application contained all the forms required to lower UIM coverage in the policy.

Trial Court Order, 12/12/22, at 1 n.1 (unnecessary capitalization omitted).

We discern no error of law or abuse of discretion by the trial court in granting Erie's motion for summary judgment and denying Eachus's cross-motion for summary judgment. During the application process, Eachus was offered UM/UIM coverage in an amount equal to the bodily injury liability limits

(*i.e.*, $100,000 per person/$300,000 per accident) of the policy he sought from Erie. However, Eachus elected not to purchase UM/UIM coverage limits in an amount equal to the bodily injury liability limits and indicated that he wished to purchase UM/UIM coverage in the amount of $15,000 per person/$30,000 per accident. Accordingly, Eachus's insurance agent presented him with a policy application which specified that he was applying for the issuance of an auto policy from Erie which only provided UM/UIM coverage in the amount of $15,000 per person/$30,000 per accident. **See** Application, 1/13/11, at 4. Consistent with Eachus's election, the application also contained a "Request for Lower Limits" form specifically requesting lower UIM policy limits at $15,000 per person/$30,000 per accident. **See id**. at 12. The application included a separate "Important Notice" form which tracked the language specified by section 1791 and which informed Eachus of the availability of higher UM/UIM limits if he wished to purchase them. **See id**. at 13. Eachus signed all three forms.

When Eachus signed the "Request for Lower Limits" form in which he specifically requesting lower UIM policy limits at $15,000 per person/$30,000 per accident, Erie satisfied section 1734's writing requirement, as the form clearly indicated Eachus's desire for reduced UM/UIM coverage, and the form was signed by Eachus, as the named insured. **See Orsag**, 15 A.3d at 901 (providing that a section 1734 written request must include the signature of the insured and an express designation of the amount of coverage requested).

Further, by signing the "Important Notice" form, Eachus evidenced his "actual knowledge and understanding of the availability of [higher UM/UIM] limits as well as the benefits and limits [he had] selected." 75 Pa.C.S.A. § 1791. Contrary to Eachus's assertion otherwise, no other language, notice, or document was required. *See id*. § 1791 (providing that "no other notice or rejection shall be required"). Moreover, each time that Eachus renewed the Erie policy and paid the renewal premium, his payment to Erie evidenced not only his actual knowledge and understanding of the availability of higher UM/UIM limits, but also his actual knowledge and understanding of the lower limits of UM/UIM coverage that he had selected. *See id*.

Had Eachus desired to purchase UM/UIM limits in an amount equal to the bodily injury liability limits of the Erie policy, he could have selected that option at any time and paid the corresponding increased premium. *See Orsag*, 15 A.3d at 901 (noting that, if the insured desired to purchase UM/UIM limits in an amount equal to the bodily injury liability limits of the policy, "the cost of premiums could increase significantly, which, presumably, is what the applicant was hoping to avoid by initially requesting the reduced [UM/UIM] coverage"). However, Eachus did not do so. Accordingly, Eachus was able to pay a reduced renewal premium each year for the lower amount of UM/UIM coverage he selected. As Eachus is not entitled to coverage for which he neither requested nor paid, he is due no relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>12/12/2023</u>