# Wyatt v. Silverstein

C.P. of Philadelphia County, March Term 2004, no. 5214.

*Jeffrey Zucker,* for plaintiff.
*William T. Hangley* and *Kathleen M. Laubenstein,* for defendants.

ABRAMSON, *J.,* January 11, 2007—This case concerns a dispute over fees for legal services. Aaron Wesley Wyatt seeks restitution of $100,000 allegedly loaned or advanced to Silverstein and Bellin LLC (S&B). Wyatt also seeks restitution of a success fee in the amount of $695,000 that S&B allegedly failed to earn. By counterclaim, Ira Silverstein and S&B assert that the $100,000 constituted neither a loan nor an advance, but a paid fee for legal services. Silverstein and S&B also assert that S&B earned and properly collected the $695,000 success fee when Wyatt sold his interests in Pilot Air Freight to Richard Phillips, a business partner. Finally, Silverstein and S&B claim that Wyatt owes S&B $389,615 for legal services rendered from February 1, 2003 to January 19, 2004, under a quantum meruit theory.

## FINDINGS OF FACT

### I. *Background*

(1) Silverstein is an attorney licensed to practice in the Commonwealth of Pennsylvania. Wyatt is a businessman and former client of Silverstein. Silverstein and Wyatt formed an attorney-client relationship in the mid-1990s, when Silverstein worked at the firm of Fox Rothschild.[1]

---

1. Amended statements of stipulated facts, ¶1.

(2) Wyatt continued to be a client of Silverstein's after Silverstein formed S&B in 2000.[2]

## II. *The November 2000 Fee Agreement*

(3) Wyatt and S&B entered into a fee agreement (the 2000 agreement), which was effective November 15, 2000.[3]

(4) Under the 2000 agreement, Wyatt agreed to pay, and did pay, S&B a monthly retainer of $20,000.[4]

(5) Under the 2000 agreement, S&B was entitled to a success fee.[5]

(6) The 2000 agreement defined "success" as either Wyatt's purchase of Richard Phillips' interests in Pilot, or as Phillips' purchase of Wyatt's interest in the same. Either way, the success fee payable to S&B amounted to 10 percent of the purchase price.[6]

(7) In January 2003, Phillips purchased Wyatt's interests in Pilot.[7]

(8) Following the sale, Wyatt paid S&B a success fee of $695,000.[8]

---

2. *Id.* at ¶2.
3. *Id.* at ¶3.
4. *Id.* at ¶4.
5. *Id.* at ¶5.
6. *Id.* at ¶7.
7. *Wyatt v. Phillips,* 2004 Phila. C.C.P. Lexis 89, *aff'd,* 880 A.2d 20 (Pa. Super. 2005), *appeal denied,* 586 Pa. 741, 891 A.2d 734 (2005).
8. Amended statements of stipulated facts, ¶10.

## III. *The 2003 Fee Agreement*

(9) Wyatt and S&B reached a new fee agreement (the 2003 agreement), whose terms were embodied in a letter from Silverstein to Wyatt, dated March 11, 2003.[9]

(10) The 2003 agreement provided that for legal representation "commencing with February 1, 2003," the success fee would be calculated as 25 percent of any recovery.[10]

(11) The 2003 agreement provided that S&B would receive a fixed monthly fee of $20,000 for all litigation.[11]

(12) The 2003 agreement provided that its terms applied to specific contemplated litigation actions in pursuit of damage claims. Specifically, the 2003 agreement named the following contemplated litigation actions against:

"(1) Richard G. Phillips, Schnader, Harrison, Segal & Lewis and Grant Thornton, arising from Wyatt's relationship with Pilot Air Freight;

"(2) John Edwards and his counsel with respect to their prosecution of the lawsuit against Wyatt which was on appeal to the Third Circuit; and

"(3) The Kearns estate and KPMG in connection with the misrepresentations of D.F. Young financials."[12]

(13) The 2003 agreement stated that S&B would handle additional assignments at no additional charge,

---

9. *Id.* at ¶19. See joint exhibit no. 6 to the amended statements of stipulated facts.

10. Amended statements of stipulated facts, ¶21.

11. *Id.*

12. *Id.*

except that, should a major new litigation or project be contemplated other than those outlined above, the parties would reach an agreement as to whether the new major litigation required modification of the 2003 agreement.[13]

(14) After the parties entered into the 2003 agreement, S&B performed legal services on behalf of Wyatt in the damages actions enumerated in the 2003 agreement.[14]

(15) After the parties entered into the 2003 agreement, S&B performed legal services on behalf of Wyatt in a number of non-litigation matters.[15]

(16) After the parties entered into the 2003 agreement, S&B performed legal services on behalf of Wyatt in a number of litigations over and above those that had been specifically identified in the 2003 agreement.[16]

## IV. *The $100,000 Fee Payment*

(17) In a letter dated October 14, 2003, Silverstein requested payment of a $100,000 fee from Wyatt for Silverstein's "work being done on the case seeking to obtain ownership of Pilot Air Freight." The letter included a bill requesting the payment of that sum for "general consultation."

(18) On December 3, 2003, Silverstein sent an e-mail to Wyatt's accountant. This e-mail requested the one-

---

13. *Id.*
14. *Id.* at ¶22.
15. *Id.* at ¶23.
16. *Id.* at ¶24.

time $100,000 payment "over and above the monthly retainer." [17]

(19) By e-mail dated December 16, 2003, Wyatt authorized his accountant to make the $100,000 payment. [18] Wyatt's e-mail to his accountant stated: "the payment for [Silverstein] is ok . . . ." [19]

(20) On December 30, 2003, the accountant paid the $100,000 to S&B. [20]

(21) On January 5, 2004, Wyatt e-mailed his accountant and asked him not to make the $100,000 payment to S&B. [21] Wyatt's e-mail to his accountant stated: "make sure we do not send the advance to [Silverstein] as I am still not sold on this concept." [22]

(22) On January 19, 2004, Wyatt fired S&B and demanded return of the $100,000. [23]

(23) At the time of the termination, all of the enumerated damages actions specifically contemplated by the 2003 agreement were still pending. [24]

---

17. *Id.* at ¶30. See joint exhibit no. 12 to the amended statements of stipulated facts.

18. *Id.* at ¶31.

19. Joint exhibit no. 13 to the amended statements of stipulated facts.

20. Amended statements of stipulated facts, ¶32.

21. *Id.* at ¶33.

22. Joint exhibit no. 14 to the amended statements of stipulated facts.

23. *Id.* at ¶34.

24. *Id.* at ¶35.

### V. *The Quantum Meruit Value of the Services on Various Matters Rendered by S&B to Wyatt*

(24) From February 1, 2003 through January 19, 2004, S&B performed legal services on behalf of Wyatt's litigation against Phillips for $389,377.50, calculated at the hourly rates of the S&B professionals who worked on the matter.[25]

(25) From February 1, 2003 through January 19, 2004, S&B performed legal services on behalf of Wyatt's litigation against Grant Thornton for $26,735, calculated at the hourly rate of the S&B professionals who worked on the matter.[26]

(26) From February 1, 2003 through January 19, 2004, S&B performed legal services on behalf of Wyatt's litigation against Schnader, Harrison, Segal & Lewis for $41,797.50, calculated at the hourly rate of the S&B professionals who worked on the matter.[27]

(27) From February 1, 2003 through January 19, 2004, S&B performed legal services on behalf of Wyatt, in connection with the litigation involving John Edwards, for $23,667.50, calculated at the hourly rate of the S&B professionals who worked on the matter.[28]

(28) From February 1, 2003 through January 19, 2004, S&B performed legal services on behalf of Wyatt's litigation involving the Kearns estate and KPMG for $8,340, calculated at the hourly rate of the S&B professionals who worked on the matter.[29]

---

25. *Id.* at ¶36.
26. *Id.* at ¶37.
27. *Id.* at ¶38.
28. *Id.* at ¶39.
29. *Id.* at ¶40.

(29) From February 1, 2003 through January 19, 2004, S&B performed other legal services attributable to specific, identified matters on behalf of Wyatt for $57,997.50, calculated at the hourly rate of the S&B professionals who worked on the matter.[30]

(30) From February 1, 2003 through January 19, 2004, S&B performed other legal services that cannot be attributed to a single, identifiable matter that S&B performed on Wyatt's behalf, for $162,000, calculated at the hourly rate of the S&B professionals who worked on the matter.[31]

(31) In total, S&B performed legal services on behalf of Wyatt for $709,615.[32]

(32) During the 11 months from February 1, 2003, to the termination date of January 1, 2004, Wyatt paid S&B a monthly fee of $20,000 pursuant to the 2003 agreement. These monthly payments totaled $220,000.

## CONCLUSIONS OF LAW

### VI. *The $695,000 Success Fee Under the 2000 Agreement*

(33) The 2000 agreement defined "success" as either Wyatt's purchase of Richard Phillips' interests in Pilot, or as Phillips' purchase of Wyatt's interest in the same. Either way, the success fee payable to S&B amounted to 10 percent of the purchase price.

---

30. *Id.* at ¶41.
31. *Id.* at ¶42.
32. Id. at ¶43.

(34) A court of law in Pennsylvania has determined that Phillips purchased Wyatt's interests in Pilot in January 2003.[33] Consequently, Silverstein and S&B are entitled to the success fee of $695,000.

## VII. *The $100,000 Fee Payment*

(35) By letter dated October 14, 2003, S&B billed Wyatt $100,000 "for work being done on the case seeking to obtain ownership of Pilot Air Freight."

(36) By e-mail dated December 3, 2003, Wyatt informed his accountant that the $100,000 payment to S&B was proper.

(37) Following these communications, Wyatt's accountant sent a check for $100,000 to S&B, on December 30, 2003.

(38) In Pennsylvania, the court ascertains the intent of the parties as manifested by the language of the written instruments.[34] When the language is clear and unambiguous, the court gives effect to that language.[35]

(39) The plain language of S&B's letter and bill to Wyatt's accountant specify that the $100,000 constituted a fee for representing Wyatt in his attempt to obtain ownership of Pilot Air Freight.

(40) There is no evidence in the written communications that the $100,000 constituted a loan from Wyatt to S&B.

---

33. *Wyatt v. Phillips,* 2004 Phila. C.C.P. Lexis 89, *aff'd,* 880 A.2d 20 (Pa. Super. 2005), *appeal denied,* 586 Pa. 741, 891 A.2d 734 (2005).
34. *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 305, 469 A.2d 563, 567 (1983).
35. *Id.*

(41) S&B is entitled to the $100,000 success fee for representing Wyatt in his attempt to acquire Pilot Air Freight.

## VIII. *The Quantum Meruit Value of the Services on Various Matters Rendered by S&B to Wyatt*

(42) Silverstein and S&B claim that S&B is entitled under the 2003 agreement to recover in quantum meruit for work done between February 1, 2003 and January 19, 2004. Silverstein and S&B claim that they are entitled to a quantum meruit amount of $709,615.

(43) Silverstein and S&B concede that Wyatt is entitled to a credit of $220,000 representing 11 monthly payments under the 2003 agreement.

(44) Silverstein and S&B concede that Wyatt is entitled to a credit of $100,000 representing the one-time payment made by Wyatt in December 2003.

(45) An attorney hired under a contingent fee arrangement, but fired before the fee has ripened, may recover in quantum meruit.[36] In such a case, the amount recoverable in quantum meruit for services performed is calculated by multiplying the number of hours worked by a fair fee.[37]

(46) If the words in a contract are clear and unambiguous, the intent of the parties may be discovered only from the express language of the agreement.[38]

---

36. *Mager v. Bultena,* 797 A.2d 948, 956-57 (Pa. Super. 2002).
37. *Id.* at 957.
38. *Steuart v. McChesney,* 498 Pa. 45, 49, 444 A.2d 659, 661 (1982).

(47) The 2003 agreement recited that S&B would be paid a fixed fee of $20,000 a month for all litigation, and would receive a success fee of 25 percent of any recovery.

(48) The language of the 2003 agreement shows that Wyatt and S&B agreed to a hybrid retainer-contingent fee arrangement for all the enumerated litigation actions. The enumerated actions governed by the hybrid retainer-contingent fee arrangement included the Richard G. Phillips litigation, the Schnader, Harrison, Segal & Lewis litigation, the Grant Thornton litigation, the John Edwards litigation, and the Kearns estate and KPMG litigation.

(49) Silverstein and S&B are entitled to $389,377.50 for legal services performed in connection with Wyatt's litigation against Richard G. Phillips, from February 1, 2003 to January 19, 2004.

(50) Silverstein and S&B are entitled to $26,735 for legal services performed in connection with Wyatt's litigation against Grant Thornton, from February 1, 2003 to January 19, 2004.

(51) Silverstein and S&B are entitled to $41,497.50 for legal services performed in connection with Wyatt's litigation against Schnader, Harrison, Segal & Lewis, from February 1, 2003 to January 19, 2004.

(52) Silverstein and S&B are entitled to $23,667.50 for legal services performed in connection with Wyatt's litigation concerning John Edwards, from February 1, 2003 to January 19, 2004.

(53) Silverstein and S&B are entitled to $8,340 for legal services performed in connection with Wyatt's litigations involving the Kearns estate and KPMG, from February 1, 2003 to January 19, 2004.

(54) The 2003 agreement recited that S&B would "handle additional assignments under this retainer arrangement at no additional charge," excluding major new litigation. The phrase "under this retainer arrangement" is ambiguous as to whether any "additional assignment" would be governed by a fixed monthly or hybrid fee arrangement.

(55) Ambiguous terms in a contract are construed against the drafter.[39]

(56) The court concludes that the legal services performed on behalf of Wyatt on matters not identified in the 2003 agreement are "additional assignments" governed by a fixed monthly fee arrangement, handled at no additional charge. Consequently, Silverstein and S&B are not entitled to $57,997.50 for legal services not identified in the 2003 agreement.

(57) Silverstein and S&B claim that they are entitled to $162,000 for legal services that cannot be attributed to a single, identifiable matter, rendered between February 1, 2003 and January 19, 2004. Silverstein and S&B claim that they are entitled to $162,000 even though S&B never issued a billing statement reflecting this amount.[40]

(58) Damages are speculative if the uncertainty concerns the fact of damages rather than the amount.[41]

(59) The court concludes that the claim for services rendered in the amount of $162,000 is speculative as to

---

39. *Smith v. Windsor Group,* 750 A.2d 304, 308 (Pa. Super. 2000).

40. Billing memorandum for non-specific matters, exhibit 13 to Silverstein's and S&B's settlement conference statement.

41. *Rizzo v. Haines,* 520 Pa. 484, 505, 555 A.2d 58, 68 (1989).

the fact of damages.[42] Consequently, Silverstein and S&B are not entitled to $162,000 for legal services that cannot be attributed to a single, identifiable matter, rendered between February 1, 2003 and January 19, 2004.

(60) The court concludes that Silverstein and S&B are entitled to recover in quantum meruit in the amount of $169,617.50. This amount reflects services rendered in connection with the Phillips litigation ($389,377.5); plus the Grant Thornton litigation ($26,735); plus the Schnader, Harrison, Segal & Lewis litigation ($41,497.5); plus the John Edwards litigation ($23,667.5); plus the Kearns estate and KPMG litigation ($8,340); minus the retainer payments from February 1, 2003 to January 19, 2004 ($213,200); minus the one-time fee of $100,000.

(61) The court finds in favor of defendants/counterclaim plaintiffs Sovereign and S&B in the amount of $169,617.50, and against plaintiff/counterclaim defendant Aaron Wesley Wyatt.

## ORDER

And now, January 11, 2007, after trial upon stipulated facts, upon consideration of the record, and in accordance with the findings of fact and conclusions of law issued contemporaneously herewith, it is ordered that plaintiff/

---

42. For example, the billing memorandum, *supra* at 40, states that "Wyatt would simply show up or call and ask to come over to talk to Silverstein with regard to various matters two to three times a week. These visits averaged about two hours each." The billing memorandum also states that "Wyatt called Silverstein virtually every day, including during the time that Silverstein was on vacation. The phone time averaged approximately a half hour per day."

counterclaim defendant Aaron Wesley Wyatt shall pay damages to defendants/counterclaim plaintiffs Ira Silverstein and Silverstein & Bellin LLC in the amount of $169,617.50.